Belknap & Merrimack
No. 80-313

MORGENROTH & ASSOCIATES, INC.

v.

TOWN OF TILTON

MORGENROTH & ASSOCIATES, INC.

v.

TOWN OF NORTHFIELD & a.

MORGENROTH & ASSOCIATES, INC.

v.

STATE OF NEW HAMPSHIRE

June 12, 1981

512

*Stanton E. Tefft,* of Bedford (*Daniel J. Harkinson* on the brief and orally), for Morgenroth & Associates, Inc.

*James D. O'Neill,* of Laconia, by brief and orally, for the Town of Tilton.

*Falardeau, Mahan & Franks,* of Tilton (*George J. Falardeau* on the brief), waived oral argument for the Town of Northfield.

*Gregory H. Smith,* attorney general (*E. Tupper Kinder,* assistant attorney general, on the brief and orally), for the State.

DOUGLAS, J. The plaintiff, Morgenroth & Associates, Inc., seeks to recover from the defendants, the Towns of Tilton and Northfield and the State of New Hampshire, the cost of preparing engineering plans for the construction of sewerage systems in those towns. The Superior Court (*Batchelder,* J.) granted the defendants' motions to dismiss for lack of jurisdiction under RSA 491:8 because the pleadings failed to allege an express or implied in fact contract with the State. The plaintiff appeals, arguing 1) that RSA 491:8 abrogates the State's sovereign immunity for contracts implied in law as well as for express and implied in fact contracts; 2) that it has alleged a contract implied in fact; and 3) that the trial court erred in dismissing the action against the towns based on RSA 491:8. We hold that the trial court correctly ruled that it did not have jurisdiction to hear claims against the State based on implied in law contracts, but hold that the plaintiff has made out a claim for an implied in fact contract. We further hold that the court erred in dismissing the action against the towns based on RSA 491:8. Accordingly, we reverse and remand.

In 1968 the plaintiff entered into contracts with the defendant towns to do certain preconstruction engineering work for the construction of a separate sewerage system for each town. Those contracts were expressly conditioned upon the towns' receipt of grant money from the U.S. Department of Housing and Urban Development. The funding for the work did not become available, and all parties agree that the plaintiff has no cause of action based on those contracts.

The facts beyond that point are in dispute. The plaintiff alleges that, after the federal funding became unavailable, it made

arrangements with the New Hampshire Water Supply and Pollution Control Commission (WSPCC) and the towns to proceed with the design phase of the project at the same time the towns looked elsewhere for construction grant funds. In 1970, the towns appropriated the funds needed for the preconstruction engineering work at town meetings attended by the plaintiff and the WSPCC. The plaintiff alleges that all parties understood that it was to do the work and that it would be paid when the money became available.

The plaintiff further alleges that it performed the work, periodically consulting with the WSPCC and companies referred to it by the towns, and, in 1972, it turned over its plans and drawings for both systems to the WSPCC. In turn, the WSPCC gave the plans to another engineering company, which used the plans in another project to build an interceptor running the length of the Winnipesaukee River Basin.

Through the administrative procedures of the WSPCC, the plaintiff sought compensation for the work it had done. When that approach proved unsuccessful, the plaintiff brought suit to recover compensation against the Town of Northfield and the State in Merrimack County Superior Court and against the Town of Tilton in Belknap County Superior Court. The cases were consolidated, and *Batchelder*, J., granted the defendants' motions to dismiss the actions against all defendants based on lack of jurisdiction under RSA 491:8. The plaintiff appeals.

 RSA 491:8 partially abrogates the State's sovereign immunity by conferring jurisdiction upon the superior court to decide claims against the State "founded upon any express or implied contract with the state." The plaintiff argues that the term "implied contract" encompasses both implied in fact contracts and implied in law contracts. An implied in fact contract is a true contract that is not expressed in words; the terms of the parties' agreement must be inferred from their conduct. 1 A. CORBIN, CONTRACTS § 18 (1963); RESTATEMENT OF CONTRACTS § 5, comment a (1932); 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 3 (1957). An implied in law contract, on the other hand, is not a contract but is a legal remedy imposed by a court "without reference to the assent of the obligor, [arising] from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." *Presby v. Bethlehem Village District*, 120 N.H. 493, 495, 416 A.2d 1382, 1383 (1980) (quoting *State v. Haley*, 94 N.H. 69, 72, 46 A.2d 533, 535 (1946)). Technically, only implied in fact contracts may be called "implied contracts"; implied in law contracts are more accurately called "quasi-contracts." 1 A. COR-

BIN, CONTRACTS § 19 (1963); RESTATEMENT OF CONTRACTS § 5, comment a (1932); 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 3A (1957). Courts, however, including this one, have used the phrase "implied in law contract" when referring to a quasi-contract. *Presby v. Bethlehem Village District, supra* at 495, 416 A.2d at 1383. Because the statutory words "implied contract" may refer either to implied in fact contracts only or also to implied in law contracts, the phrase is ambiguous.

■■ In construing the ambiguous language of a statute, this court must determine the legislature's intent. *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 302 (1980); *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979). Although there is no legislative history to guide us in interpreting RSA 491:8, the reports of the Judicial Council can be an acceptable source of information on legislative intent. *See Corson v. Brown Prods., Inc., supra* at 23, 397 A.2d at 642; 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 48.11 (3d ed. rev. 1973).

■ In 1950 the Judicial Council, pursuant to the authority conferred on it by the legislature, Laws 1945, 169:1 (current codification at RSA 494:3), recommended enactment of a statute abrogating State sovereign immunity for claims based on express or implied contracts and submitted a draft bill to the legislature. N.H. JUDICIAL COUNCIL, THE THIRD REPORT 42 (1950). The law as originally enacted did not follow the Judicial Council's recommendation with regard to implied contracts. N.H. JUDICIAL COUNCIL, THE FOURTH REPORT 34 (1952); *see* Laws 1951, 243:1. In 1952, the Judicial Council renewed its recommendation, commenting:

> "It seems probable that the refusal to confer general authority upon the Superior Court in actions founded upon contract was due to some misconception as to the nature of an implied contract. An implied contract in its essential characteristics is not different from an express contract except that some terms must be implied. In any suit founded on contract, either express or implied, recovery depends upon the existence of a contract. The fact that some of the terms may be implied or inferred from the conduct of the parties does not alter the basic character of the action."

N.H. JUDICIAL COUNCIL, THE FOURTH REPORT 34 (1952).

That explanation, and the examples that followed, show that the Judicial Council understood an "implied contract" to be an implied in fact contract. *Id.; see* 1 A. CORBIN, CONTRACTS § 18 (1963);

RESTATEMENT OF CONTRACTS § 5, comment a (1932); 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 3 (1957). The legislature subsequently followed the recommendation of the Judicial Council and amended RSA 491:8 to include "implied contracts." Laws 1953, 83:1. From this sequence of events, we conclude that the legislature intended to adopt the Judicial Council's interpretation of "implied contract," which is limited to an implied in fact contract.

■ Having concluded that the superior court has authority under RSA 491:8 to hear only those claims against the State based on implied in fact contracts, we must determine whether the plaintiff had made out such a claim. Based on the plaintiff's pleadings and offer of proof, the trial court concluded that the plaintiff sought damages based on a contract implied in law. The court correctly determined that it had no jurisdiction under RSA 491:8 to hear a claim based on an implied in law contract and, accordingly, granted the defendants' motions to dismiss. In evaluating the propriety of the trial court's action, we must assume that all the facts alleged by the plaintiff are true and construe all reasonable inferences from those facts favorably to the plaintiff. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 610, 392 A.2d at 578.

■ The plaintiff's pleadings against each of the parties are essentially the same. They allege that the plaintiff performed the work "in reliance" on acts and representations of the towns and WSPCC, that the defendants

> ". . . *were aware* that Plaintiff was doing the work; that upon completing the work Plaintiff submitted the resulting plans to the Commission; that inasmuch as the work . . . *concerns* sewage treatment, and was acquired by the Defendant State, the State is obligated to pay for it under RSA 149-G; . . . that Plaintiff has demanded of Defendants that they pay said amount to Plaintiff, but Defendants have wrongfully refused to do so . . . ."

(Emphasis added.) The plaintiff's pleadings are not masterful, but that fact should not necessarily defeat its claim. *See Berlinguette v. Stanton*, 120 N.H 760, 762, 423 A.2d 289, 290 (1980). The pleadings make out a claim based only on an implied in law contract. When expanded by the offer of proof and read favorably to the plaintiff, however, the facts alleged make out a cause of action based on an implied in fact contract.

In his offer of proof, the plaintiff maintained:

> "[T]he State engineers went to both towns and . . . said, 'Look, you had better plan to do something quickly because you're under the gun to get this sewer system taken care of. We would suggest . . . that you appropriate $150,000.00 for this engineering work. . . . [G]o ahead and appropriate the money now and get the work done. By the time the money is ready, the plans will be drawn and you can put it out to bid and you're going to save yourself a year.' So they had Mr. Morgenroth come back in, and at two town meetings—matter of fact, four town meetings, two preliminary town meetings and two regular town meetings—

The Court: [Interposing] When you say they, you're referring—you say they had him—

The Plaintiff: [Interposing] *That's the State people and the town officials as well. Everybody was there.*

The Court: All right.

The Plaintiff: And the State people asked questions and so forth and so on, and the two towns voted to appropriate the $150,000.00. *There was an understanding it wasn't going to be paid then, it was going to be paid down the road. In the meantime, Mr. Morgenroth was to do the work.* So, subsequent to that vote, Morgenroth and his crew, with the assistance of the State people and the town officials, did all of the engineering work in Northfield and Tilton, and once or twice a month we have consultment at the office in Concord . . . ."

(Emphasis added.)

■■ The facts allege that all parties understood that the plaintiff would do the preconstruction engineering work, and that it would be paid when the money became available. The trial court erred in granting the motion to dismiss that complaint. The plaintiff should be allowed to amend its pleadings to conform to the offer of proof.

 The State argues that, under RSA 149-G:2 (Supp. 1979), it is not obligated to pay the costs of engineering services for the design of sewerage systems unless there is a written agreement that has been reviewed, approved, and co-signed by an official authorized to bind the State. Assuming that to be the correct interpretation, the statute would limit the application of RSA 491:8 to express contracts and would clearly bar the plaintiff's cause of action in this case. The plaintiff, however, submitted the work for which it seeks compensation to the towns in May 1972, and the statute did not become effective until July 1, 1972. The statute cannot be applied retroactively to defeat the plaintiff's cause of action. *See Lozier v. Brown Company*, 121 N.H. 67, 70, 426 A.2d 29, 31 (1981); *Martin v. Gardner Machine Works*, 120 N.H. 433, 435–36, 415 A.2d 878, 880 (1980).

The statutory scheme as it existed prior to the enactment of RSA 149-G:2 in 1972 did not bar suits against the State based on implied in fact contracts, even if the contract related to the construction of a sewerage system. RSA 149:4 XIII *empowers* but does not *require* the water supply and pollution control commission to review, approve, and co-sign contracts for engineering services related to the construction of sewerage systems. RSA 491:8, which permits an action against the State based on an implied in fact contract, therefore controls.

 The plaintiff argues that the trial court erred in granting the towns' motions to dismiss based on RSA 491:8 because that statute applies only to the State. We agree. Even if the State were immune from suit in this case, the towns are not necessarily also immune, because "State immunity is broader than municipal immunity . . . ." *Sousa v. State*, 115 N.H. 340, 342, 341 A.2d 282, 283 (1975). Although RSA 149-G:2 (Supp. 1979) obligates the State to pay for engineering services and contract costs related to the construction of sewerage systems, it does not absolve the towns of any initial obligation they might have under their own contracts, *see* RSA 31:1, or based on implied in law contracts. *Presby v. Bethlehem Village District*, 120 N.H. at 495–96, 416 A.2d at 1383 (1980).

The towns argue that the trial court correctly dismissed the actions against them because the plaintiff dealt exclusively with the State in performing the work. The plaintiff, however, disputes that assertion.

In his offer of proof, he stated,

"[P]eople there in the town, both Tilton and Northfield, would come into the selectmen and say, when are they

going to do this, when are they going to do that, and the selectmen would write to Morgenroth requesting him to, you know, take care of a certain problem."

Additionally, in the portion of the offer of proof cited earlier, the plaintiff asserted that all parties agreed that the plaintiff would be paid from the money appropriated by the towns. Because we must assume that the plaintiff's version of the story is true, *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 610, 392 A.2d at 578, we hold that the trial court erred in granting the motions to dismiss.

*Reversed and remanded.*

BROCK, J., did not sit; the others concurred.