Hillsborough
No. 87-366

PHILIP J. KENNEDY

v.

DAVID R. TITCOMB

February 6, 1989

400

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James E. Higgins* and *John A. Rachel* on the brief, and *Mr. Rachel* orally), for the plaintiff.

*Cleveland, Waters and Bass P.A.*, of Concord (*Craig L. Staples* and *David W. Rayment* on the brief, and *Mr. Staples* orally), for the defendant.

JOHNSON, J. The plaintiff in this action alleged, in a four-count writ, that the defendant, the majority shareholder in a corporation known as Flags I, Inc., had refused to purchase the plaintiff's shares at the same price he had paid to other shareholders, while acquiring majority control of the corporation. The Trial Court (*Murphy*, J.) dismissed the plaintiff's writ, *sua sponte* and without prejudice, for failure to state a claim upon which relief can be granted. The plaintiff then amended his writ to allege that the defendant's offer to purchase the plaintiff's shares at a lower price than that offered to other shareholders was part of "a plan to freeze the [p]laintiff out of participation in and the benefits of Flags I stock ownership . . . ." The trial court denied the request to amend, "as the amendment proffered . . . states no cognizable cause of action." The plaintiff appeals these rulings. We affirm.

The plaintiff and defendant were each shareholders in a New Hampshire close corporation involved primarily in the development of real estate in Hooksett. The corporation, as originally organized, had eight shareholders owning a total of 385 shares. The plaintiff and the defendant each owned 100 shares. Two shareholders, who together owned 30 shares, returned their shares to the corporation shortly after its organization.

The corporation's real estate development was an apparent success. The plaintiff's writ alleged that the defendant, thereafter, personally, or through "entities under his control," purchased one block of 15 shares and another block of 20 shares from two shareholders at a price of $4,856 per share and a third block of 100 shares at a price of $6,205 per share. These purchases resulted in the defendant's gaining majority control of Flags I, Inc. The defendant then offered to purchase the plaintiff's shares at $2,600 per share.

In the plaintiff's original writ, he alleged that the defendant had "a duty to treat all shareholders, including the [p]laintiff, fairly" and that, because the defendant had failed to do so, the plaintiff had been damaged. The other counts in the plaintiff's writ reiterated the above facts, alleged damage from intentional infliction of emotional distress and negligent infliction of emotional distress, and demanded enhanced damages because the defendant "acted intentionally, maliciously, and unconscionably in his failure to treat the plaintiff fairly. . . ."

The trial court, in first dismissing the plaintiff's writ without prejudice, discussed *Sugarman v. Sugarman*, 797 F.2d 3, 8 (1st Cir. 1986), noting that the case "does recognize a cause of action in favor of a minority [share]holder in a close corporation who receives and rejects an inadequate offer if the shareholder can prove that the offer was part of a plan to freeze the minority shareholder out of the corporation." The trial court then noted that the original writ contained no allegation of such a freeze-out plan, nor could the allegation of such a plan be reasonably inferred from the writ "viewing it in a light most favorable to the plaintiff." The plaintiff then moved to amend the writ as set forth above, and the trial court denied the request.

It is elementary that this court, in reviewing the trial court's order of dismissal, must determine whether the plaintiff's writ contains facts which are sufficient to constitute a cause of action. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 44, 534 A.2d 706, 708 (1987). This court "must rigorously scrutinize the complaint to determine whether, *on its face*, it asserts a cause of action." *Id.* at

44–45, 534 A.2d at 708. (Emphasis in original.) A trial court has the discretion to dismiss an action *sua sponte* where the allegations contained in a writ do not state a claim upon which relief can be granted. *See Garabedian v. William Company*, 106 N.H. 156, 157–58, 207 A.2d 425, 426–27 (1965); *Burgess v. Burgess*, 71 N.H. 293, 51 A. 1074, 1075 (1902). Finally, where a writ merely states a legal conclusion, but does not allege specific facts to support that legal conclusion, the writ may be dismissed. *Jay Edwards, Inc., supra* at 45, 534 A.2d at 708.

 A shareholder who desires to gain control of a corporation is free to pay other shareholders a premium in order to gain such control. *See Christophides v. Porco*, 289 F. Supp. 403, 405 (S.D.N.Y. 1968). The shareholder who is attempting to gain control is under no duty to pay all minority shareholders equally as he attempts to amass the controlling interest in the corporation. *See id.* Indeed, the acquiring shareholder is under no duty to make any offer whatsoever to a minority shareholder. *See Goode v. Ryan*, 397 Mass. 85, 91–92, 489 N.E.2d 1001, 1005 (1986); *Huddleston v. Western Nat. Bank*, 577 S.W.2d 778, 781–82 (Tex. Civ. App. 1979).

The plaintiff in this action attempts to invoke the "equal opportunity rule" set forth in the case of *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505 (1975). That rule requires that, where a close corporation *redeems* its own stock from one of the controlling shareholders, the controlling shareholders must cause the corporation to offer each shareholder an equal opportunity to sell a ratable number of his shares to the corporation at an identical price. *Id.* at 598, 328 N.E.2d at 518.

 However, the equal opportunity rule does not apply to the facts of this case for the simple reason that we are not here involved with a redemption of stock by the corporation, but instead with one shareholder purchasing stock from other shareholders. Furthermore, the equal opportunity rule has not been accepted by all courts, and we neither accept nor reject it at this time.

 The trial court in its order referred to the "freeze-out" rule set forth in *Sugarman v. Sugarman*, 797 F.2d 3. Under that rule, if the minority shareholder can allege specific facts showing that the majority shareholders have embarked upon a plan to freeze-out the minority from their rightful benefits, a cause of action may accrue. *See Sugarman*, 797 F.2d at 8. The *Sugarman* court stated:

"In a close corporation . . . a minority shareholder who merely receives an offer from a majority shareholder to sell stock at an inadequate price, but does not accept that offer, can still seek damages *if* the shareholder can prove that the offer was part of a plan to freeze the minority shareholder out of the corporation. That is, the minority must first establish that the majority shareholder employed various devices to ensure that the minority shareholder is frozen out of any financial benefits from the corporation through such means as the receipt of dividends or employment, and that the offer to buy stock at a low price is the 'capstone of the majority plan' to freeze out the minority."

*Id.* (quoting *Donahue*, 367 Mass. at 592, 328 N.E.2d at 515). (Emphasis in original.)

Hence, had the plaintiff alleged that the defendant was being paid in excess of the value of his services, or that the plaintiff was wrongfully being denied dividends, or that there were other actions being taken to deny him the benefits of stock ownership, then the plaintiff would arguably have stated a cause of action, *see Christophides v. Porco*, 289 F. Supp. at 405–06, assuming *arguendo* that the freeze-out rule applied. However, the mere assertion that the plaintiff was being subjected to a freeze-out plan, and that the defendant had paid other shareholders more for their stock than he had offered the plaintiff, fails to state a claim even if we were to adopt the freeze-out rule.

We hold that the plaintiff has failed to state a cause of action because he has failed to allege facts upon which relief can be granted. Because of this holding, we need not decide whether to accept or reject the "freeze-out" rule, as set forth in *Sugarman,* and we decline to do so.

*Affirmed.*

All concurred.