Merrimack
No. 90-044

ROBERT LaROCHE, ADMINISTRATOR OF THE
ESTATE OF MARK LaROCHE

v.

JANE DOE AND THE STATE OF NEW HAMPSHIRE

July 31, 1991

*Upton, Sanders & Smith*, of Concord (*Gary B. Richardson* and *Gilbert Upton* on the brief, and *Mr. Richardson* orally), for the plaintiff.

*John P. Arnold*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief, and *Douglas N. Jones*, assistant attorney general, orally), for the State.

HORTON, J. Two questions are presented in this appeal from a final order of the Superior Court (*Manias*, J.) dismissing the plain-

tiff's wrongful death action: (1) whether the State of New Hampshire waived its sovereign immunity by filing a general appearance and by failing to raise its sovereign immunity in a timely fashion; and (2) whether the court erred in dismissing the action against an unidentified defendant, "Jane Doe," asserted to be one of four known State employees, in her individual and personal capacity, and denying the plaintiff's subsequent motion to amend the writ to include the names of those four known employees. A subsidiary question under the second issue, assuming that the original action was properly dismissed and leave to amend properly denied, is whether *res judicata* bars a separate action which was filed by the plaintiff naming each of the four known employees as defendants. For the reasons stated below, we affirm the trial court's rulings in the original action. Our opinion today, however, does not erect a *res judicata* barrier to the subsequently-filed action.

■ The standard this court applies in reviewing a motion to dismiss is whether or not the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985). For review purposes, we accept the plaintiff's allegations of fact as true, and, if they constitute a basis for legal relief, we must hold the motion to dismiss improperly granted. *See id.*

According to those allegations, on June 15, 1985, Mark LaRoche, the plaintiff's intestate, was killed when struck by a motorcycle operated by Mark Grigorenko, an intoxicated seventeen-year-old. Earlier that day, Grigorenko obtained an intoxicating beverage by entering the Interstate 93 North State Liquor Store in Hooksett and there purchasing a bottle of "Southern Comfort" from a female employee managing one of the cash registers. This employee did not request proof of age. Although Grigorenko was unable to identify the actual employee, personnel records disclose that only four female employees were on duty in the store on the date in question. None of these four employees has admitted to allowing Grigorenko to purchase the intoxicating beverage.

The plaintiff brought a wrongful death action naming as defendants "Jane Doe, an unknown person who was employed by the State of New Hampshire at the State Liquor Store on Interstate 93 North in Hooksett, N.H. on June 15, 1985," and the State of New Hampshire. The attorney general appeared generally on behalf of both defendants, but chose not to file a special plea or brief statement

within thirty days of the return date of the writ. *See* SUPER. CT. R. 28. In its pretrial statement filed on May 20, 1988, the State asserted its defenses as a general denial of the plaintiff's negligence claims, proximate cause, and comparative fault of the plaintiff. Without further elaboration, the State also indicated that it was waiving "none" of its defenses. Trial was scheduled for February 6, 1989.

Approximately one month prior to trial, and more than twenty months after the filing of the action by the plaintiff, the State filed a motion to dismiss the action against it on the ground of sovereign immunity. It asserted that the version of RSA 541-B:9 applicable to a tort claim arising in June of 1985 denied the superior court jurisdiction over the case. This motion was granted by the trial court, which dismissed the action without prejudice. The court similarly dismissed the action against Jane Doe because she was not a sufficiently identified defendant. A subsequent motion in which the plaintiff asked leave to amend his writ by adding as defendants the four identified female employees, one of whom (he asserted) was Jane Doe, was denied by the court. It determined to stay its earlier dismissal order with respect to Jane Doe, however, to allow the plaintiff an opportunity for additional discovery aimed at identifying the particular employee alleged to be responsible. This additional discovery did not resolve the identity of Jane Doe, and the trial court finally dismissed the action on March 26, 1990, granting the plaintiff leave to file a complaint with the board of claims. This appeal followed.

■■ Prior to the final order of dismissal in the superior court, the plaintiff filed a separate action in the same court, based upon the same circumstances and naming as defendants, *inter alia*, the four female State Liquor Store employees. That case is still pending. At oral argument in this case, counsel for the plaintiff expressed his concern that the *res judicata* effect of any opinion we might issue affirming the trial court in the first action would bar the second action. *Res judicata* prevents suit when the dispute between the parties has been resolved on the merits in a previous action. *See Ainsworth v. Claremont,* 108 N.H. 55, 56, 226 A.2d 867, 869 (1967), *quoted in* R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1871, at 391 (1984). The dismissal here was without prejudice and was based on the immunity of the State from suit and on a procedural failure to identify the individual defendant. Such a disposition is not equivalent to a dismissal on the merits, RESTATEMENT (SECOND) OF JUDGMENTS § 20, at 170 (1980), and nothing in that dismissal or in this opinion bars a further, properly pleaded, action.

In his first argument, asserting that the trial court erred in finding sovereign immunity applicable, the plaintiff does not challenge the constitutionality or relevance of the version of RSA 541-B:9 in effect for claims arising before July 3, 1985. Laws 1977, 595:2, *amended by* Laws 1985, 412:6. Applying this statute, the trial court dismissed the action against the State on the ground that exclusive jurisdiction lay with the board of claims. *See, e.g., Slovenski v. State,* 132 N.H. 18, 20–21, 561 A.2d 1072, 1074 (1989); *Newell v. N.H. Div. of Welfare,* 131 N.H. 88, 91, 550 A.2d 109, 111 (1988).

The plaintiff contends, however, that, under the facts of this case, the State waived its immunity and, hence, was susceptible to suit in superior court on his claim, and that the court's finding to the contrary was erroneous. According to the plaintiff, this waiver occurred either when the State, through its attorney general, filed a general, rather than a special, appearance, or when it chose not to raise the issue in a brief statement, a special plea, or a pretrial statement. *See* SUPER. CT. RS. 28, 62B(6).

■ We do not agree. Sovereign immunity is a jurisdictional question "not to be waived by conduct or undermined by estoppel." W.P. KEETON, D. DOBBS, R. KEETON, G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 131, at 147 (5th ed. Supp. 1988). It is not a defense which must be affirmatively pled. *See* Laws 1985, 412:2 (removed sovereign immunity from RSA 99-D:6, which had previously read: "Nothing contained in this chapter shall be construed or held to constitute a waiver of any defense including that of sovereign immunity otherwise available against the claim"). Under the doctrine, the State cannot be sued in its own courts unless it consents to such suit. *Tilton v. Dougherty,* 126 N.H. 294, 297, 493 A.2d 442, 444 (1985). To the extent that the legislature waived sovereign immunity in the earlier version of RSA 541-B:9, full compliance with the procedures and restrictions of that statute was a necessary predicate of jurisdiction. *Kenosha v. State,* 35 Wis. 2d 317, 151 N.W.2d 36 (1967).

■ Our decisions have found express or implied consent to suit only in the acts of our legislature. *See, e.g., State v. Brosseau,* 124 N.H. 184, 190, 470 A.2d 869, 873 (1983); *State Employees' Ass'n of N.H. v. Belknap County,* 122 N.H. 614, 621–22, 448 A.2d 969, 972 (1982); *Chasse v. Banas,* 119 N.H. 93, 96, 399 A.2d 608, 610 (1979). Although the plaintiff has presented us with authority from several jurisdictions finding an implied waiver when a State's agent filed only a general appearance or failed to raise sovereign immunity in a timely fashion, *see, e.g., Kleban v. Morris,* 363 Mo. 7, 247 S.W.2d 832

(1952); *39th-40th Corporation v. Port of New York Author.*, 65 N.Y.S.2d 712 (1946); *Jackson County v. McGlasson*, 167 Tenn. (3 Beeler) 311, 69 S.W.2d 887 (1934), the offered precedents do not persuade us that New Hampshire courts may hear an action where the State Legislature has not vested the courts with subject matter jurisdiction by "'prescrib[ing] the terms and conditions on which it consents to be sued and the manner in which such suit will be conducted.'" *Sousa v. State*, 115 N.H. 340, 344, 341 A.2d 282, 285 (1975) (quoting *Wooster v. Plymouth*, 62 N.H. 193, 204 (1882)); *see also Bow v. Plumer*, 79 N.H. 23, 25, 104 A. 35, 36 (1918) (rejecting argument "that the appearance of the attorney-general amounts to a consent on the part of the state to submit the cause to judicial investigation and judgment"). Therefore, we reaffirm our holding that the waiver of sovereign immunity is the exclusive province of our legislature, subject to certain constitutional constraints. *See Brosseau, supra* at 192, 470 A.2d at 874.

Our holding today is not at variance with the decision in *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974), where we judicially abrogated municipal immunity. Not only have we always considered State sovereign immunity a doctrine separate and apart from municipal immunity, *see id.* at 731, 332 A.2d at 384, and generally declined to set aside sovereign immunity, *see Brosseau supra*, but our holding in *Merrill* was justified by the many exceptions, judicial and legislative, which had riddled and enervated the judge-made rule of municipal immunity. 114 N.H. at 728–29, 332 A.2d at 382–83. Even though we determined to abolish that form of governmental immunity, we felt it appropriate to leave to the legislature the task of ordering the terms and conditions of suits against municipalities and "to take any other action which in its wisdom it may deem proper." *Id.* at 730, 332 A.2d at 384. Further, we excepted the immunity of the State itself from *Merrill's* new rule, *id.* at 731, 332 A.2d at 384, and we note that the legislature then promptly indicated its desire to retain sovereign immunity to the fullest extent compatible with constitutional concerns. *See* RSA 99-D:1 (adopting sovereign immunity as the law of the State); *see also Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182 (1985).

■ Neither improvident procedural choices, nor the tardiness of the State's attorney in raising sovereign immunity, can be a proper basis for finding that immunity waived. Because the State's sovereign immunity may be waived only by the legislature, *a fortiori* the State's actions in failing to swiftly seek dismissal of this case, though

a regrettable squandering of public resources, nonetheless had no effect as a waiver of the State's basic immunity from suit. The superior court here correctly ruled that it had no jurisdiction and that jurisdiction lay, by order of the legislature, with the board of claims. *See also Greenfield Const. Co., Inc. v. Hwy. Dept.*, 402 Mich. 172, 261 N.W.2d 718 (1978) (same result addressing waiver of sovereign immunity under the Michigan Court of Claims Act).

In his second argument, the plaintiff asserts that the trial court erred in dismissing the action as against Jane Doe and, further, in denying the plaintiff leave to amend his writ by adding as defendants the four known female employees.

■■ The trial court has the discretion to dismiss a case upon its own motion where the allegations contained in the writ do not state a claim upon which relief can be granted. *Kennedy v. Titcomb*, 131 N.H. 399, 402, 553 A.2d 1322, 1323 (1989). The trial court here attempted to alleviate the plaintiff's hardship by providing ample opportunity for discovery. The plaintiff has stipulated that even after additional discovery, Jane Doe's identity remains unknown. Under the circumstances, the trial court did not err in dismissing the wrongful death action against this unnamed defendant.

The plaintiff also contends that the trial court erred in denying his motion for leave to amend. He points out that the action could have proceeded against each of the four known female employees under the doctrine of *res ipsa loquitur.* Although *res ipsa loquitur* has long been the law of this State, *see, e.g., Foss v. Baker*, 62 N.H. 247, 249 (1882), this court has apparently never had occasion to apply the doctrine in a case involving multiple defendants, *see, e.g., Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687 (1944); W.P. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS § 39, at 251–53 (5th ed. 1984). We must decline the plaintiff's invitation to do so in this appeal, however, because he has not persuaded us that it was error for the trial court to deny his motion for leave to amend.

■ Amendments to pleadings are to be liberally allowed. *See Kenneth E. Curran, Inc. v. Auclair Transp., Inc.*, 128 N.H. 743, 746, 519 A.2d 280, 282 (1986). Nonetheless, the trial court's discretion in dismissing a case *sua sponte* upon the allegations contained in the writ, *Kennedy supra*, includes the authority to deny a motion for leave to amend where the proposed amendment does not cure the defect in the writ. The motion for leave to amend in the present case included only the allegation that there were four female employees

working at the store on the date in question and requested permission to add their names to the writ. The plaintiff asserts that, on appeal, the State may not argue the insufficiency of this bare allegation to state a cause of action, as there is an inference to be drawn in his favor that the amendment advanced a theory that the four named female employees could be found liable under the doctrine of *res ipsa loquitur* because they had joint and exclusive control of the intoxicating beverage in the store. We disagree.

The plain language of the plaintiff's proposed amendment suggested only that he sought to preserve the action for trial by naming four individuals, one of whom might be Jane Doe. There was, for example, no allegation of joint control in the motion as filed. The plaintiff contends that, had he been allowed to amend his pleadings, he would have included substantial allegations about the nature and extent of the joint control that each of the four known female employees exercised over the inventory of liquor in the store. Specifically, the plaintiff states that he would have cited the extensive training each State Liquor Store employee receives concerning the duty to prevent underaged individuals from wandering around the store and possibly circumventing the protection a proof of age request provides by stealing intoxicating beverages, and that this evidence would have made out a case for joint and exclusive control on the part of the four proposed defendants. The plaintiff should have presented this contention to the trial court in his motion for leave to amend. It is not our province to consider it here, when it was not raised below. *Stewart v. Farrel,* 131 N.H. 458, 463–64, 554 A.2d 1286, 1290 (1989).

 Although we determine that the trial court could properly deny the plaintiff's motion to amend because the allegations were inadequate to support amendment, we observe that a trial court may also refuse a proffered amendment when it requires the court to entertain a new cause of action or to hear substantially new evidence. *Kenneth E. Curran, Inc. supra.* Amending the writ to support a theory of liability premised upon *res ipsa loquitur* presents both a new cause of action and a requirement that the trial court hear substantially new evidence on new issues. *See V.S.H. Realty, Inc. v. City of Rochester,* 118 N.H. 778, 781–82, 394 A.2d 317, 319–20 (1978).

*Affirmed.*

All concurred.