Hillsborough-northern judicial district
No. 2004-552

PATRICK J. LORENZ & a.

v.

NEW HAMPSHIRE ADMINISTRATIVE OFFICE OF THE COURTS & a.

Argued: June 1, 2005
Opinion Issued: September 29, 2005

*Nixon, Raiche, Manning, Vogelman & Leach, P.A.*, of Manchester (*David L. Nixon & a.* on the brief, and *Mr. Nixon* orally), for the plaintiffs.

*Kelly A. Ayotte*, attorney general (*Orville B. Fitch, II*, senior assistant attorney general, and *Laura E. B. Lombardi*, assistant attorney general, on the brief, and *Ms. Lombardi* orally), for the defendants.

HORTON, J., retired, specially assigned under RSA 490:3. The plaintiffs appeal an order of the Superior Court (*Hollman*, J.) dismissing their petition for declaratory judgment. We affirm the result, albeit on different grounds.

The plaintiffs, judicial branch employees working for the New Hampshire Superior Court, brought this petition for declaratory judgment seeking a determination that the defendants, the New Hampshire Administrative Office of the Courts and the New Hampshire Supreme Court, be equitably estopped from terminating their employment except for just cause based upon poor individual job performance or misconduct.

The superior court rejected the plaintiffs' claim for specific performance of an alleged oral contract for continued employment and, further, dismissed the action for failure to state a claim upon which relief may be granted. The plaintiffs appealed and this court ordered briefing and oral argument on the two issues upon which the case was dismissed by the trial court. Following oral argument, we requested supplemental briefing on the issue of sovereign immunity.

On appeal, we do not reach the merits of the plaintiffs' claims because we hold that they are barred by sovereign immunity. Pursuant to that immunity, neither the superior court nor this court is vested with subject matter jurisdiction. *See LaRoche, Adm'r v. Doe*, 134 N.H. 562, 566 (1991).

 In New Hampshire, the State is immune from suit in its courts without its consent. *Sousa v. State*, 115 N.H. 340, 342 (1975). "Sovereign immunity is a jurisdictional question not to be waived by conduct or undermined by estoppel." *LaRoche*, 134 N.H. at 566 (quotation omitted). "It is not a defense which must be affirmatively pled." *Id.*

Sovereign immunity rested on a common law basis until the enactment in 1978 of RSA chapter 99-D, which adopted sovereign immunity "as the law of the state," except where a statute might provide an exception. *Tilton v. Dougherty*, 126 N.H. 294, 298 (1985) (quotation omitted); *see LaRoche*, 134 N.H. at 566 ("[o]ur decisions have found express or implied consent to suit only in the acts of our legislature"). The plaintiffs concede that the defendants in this case "are included within the scope of the sovereign immunity doctrine as applied in New Hampshire."

 New Hampshire courts lack subject matter jurisdiction to hear an action against the State unless the legislature has "prescribe[d] the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." *Sousa*, 115 N.H. at 344 (quotation and ellipsis omitted). The doctrine "serves two general public policy considerations: the protection of the public against profligate encroachment on the public treasury, and the need for the orderly administration of government, which, in the absence of immunity, would be disrupted if the state could be sued at the instance of every citizen." *In re Estate of Raduazo*, 148 N.H. 687, 692 (2002) (quotation omitted), *cert. denied*, 539 U.S. 942 (2003).

The plaintiffs argue that the State waived its immunity from this suit by enacting RSA 491:8 (1997). In addition, the plaintiffs argue that there is no prohibition of declaratory judgment actions against the State and that the instant action, "which seeks only a declaration that termination of the plaintiffs' employment ... would breach the promises made to [them]," should be permitted to proceed. We disagree.

▮ Jurisdiction has been conferred upon the superior court "to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state." RSA 491:8. This statute, however, has been interpreted to limit relief to suits seeking money damages for breach of contract. *Wiseman v. State*, 98 N.H. 393, 397 (1953). "[RSA 491:8] contains no reference to redress in equity and therefore requires *a fortiori* an interpretation which limits the consent given to actions for the recovery of damages." *Id.*

As the trial court recognized in this case, "[t]he appropriate remedy . . . is by way of an action for damages for breach of contract." The plaintiffs, however, have not brought a suit seeking money damages for breach of contract and, therefore, the case does not fall within the limited waiver of immunity established by RSA 491:8.

▮ We also disagree with the plaintiffs that because this action is one for declaratory judgment, it should be allowed to proceed. The plaintiffs cite *Raduazo* as "[d]irectly on point." In *Raduazo*, however, the State invited jurisdiction by entering a claim in probate court over certain funds. *Raduazo*, 148 N.H. at 688. As this court recognized, sovereign immunity does not apply when the State itself asserts a claim over another's property. *See id.* at 692. The case does not support the plaintiffs' position that any citizen may file a declaratory judgment action against the State.

▮ The declaratory judgment statute, RSA 491:22 (1997), "has long been construed to permit challenges to the constitutionality of actions by our government or its branches." *Grinnell v. State*, 121 N.H. 823, 825 (1981).

> When a law is challenged as unconstitutional, the claim is that the law is void and hence that no law has been enacted. It follows that if the legislature has not acted under authority, no action has been taken by the State, and hence when suit is brought to restrain those representing the State from carrying the void legislation into operation and enforcing it, it is not a proceeding to which the State is a party.

*Conway v. Water Resources Board*, 89 N.H. 346, 348 (1938). Accordingly, where the plaintiffs seek a declaratory judgment that actions taken by the State are unconstitutional, "the court ha[s] jurisdiction to grant equitable relief." *Claremont School Dist. v. Governor (Costs and Attorney's Fees)*, 144 N.H. 590, 593 (1999). The plaintiffs here, however, do not challenge the constitutionality of the actions taken by the defendants. In the absence of specific legislative consent, they are barred by sovereign immunity from bringing this petition.

■ Furthermore, although the plaintiffs assert that they are only seeking a declaration of their legal rights to continued employment, the plaintiffs affirmatively seek to prevent the defendants from firing, laying off, or eliminating their employment and seek to void an administrative order issued by the New Hampshire Supreme Court authorizing the plaintiffs' layoffs. Although the plaintiffs amended their original petition for protective injunction to one for declaratory judgment, the requested relief remained essentially the same. As the trial court stated, "[R]egardless of how the petitioners have styled their suit in equity ... [they] are effectively proceeding upon the theory that they are entitled to specific performance of promised employment for life. . . . [S]uch a promise is not enforceable in equity by specific performance or injunctive relief," or, may we add, by declaratory judgment.

Although a contract action for damages is expressly allowed by RSA 491:8, the plaintiffs have not brought such an action. Because the plaintiffs do not challenge the constitutionality of the defendants' actions and the State has not consented to be sued in equity for the claims presented by the plaintiffs, this action is barred by sovereign immunity. The petition is dismissed *ab initio*. The order of the trial court is vacated, except as specifically approved herein. This decision does not bar a future action for damages consistent with RSA 491:8 as interpreted in *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511 (1981).

*Vacated and dismissed.*

TEMPLE and DICKSON, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred; PAPPAGIANIS and DUNN, JJ., retired superior court justices, specially assigned under RSA 490:3, dissented.

PAPPAGIANIS and DUNN, JJ., retired superior court justices, specially assigned under RSA 490:3, dissenting. We would grant the plaintiffs' second motion for restraining order and/or extended/further stay of execution of career termination efforts, a motion that sought to enjoin the April 8, 2005 supreme court administrative order laying off all court reporters/stenographers; withdraw the majority's September 7, 2005 order denying that second motion; rule that the supreme court's April 8, 2005 administrative order and the defendants' April 21, 2005 notice of employment termination are not effective in the present circumstances because of a July 28, 2004 trial court order; and remand the case to the trial court with an order to permit the plaintiffs to conduct discovery within a reasonable time period to be set by the trial court.

The majority rejects the plaintiffs' argument that the State waived its immunity from the present suit by enacting RSA 491:8 (1997), saying that RSA 491:8 limits relief to suits seeking money damages for breach of contract and makes no reference to redress in equity. The majority opinion overlooks the oft-stated position of the plaintiffs that termination of their employment would breach promises made to them, entitling them to pursue their rights by equitable estoppel *or* pursuant to RSA 491:8. "In the event of a [declaratory judgment] ruling in favor of the plaintiffs, they would be entitled to enforce their rights, if necessary, pursuant to RSA 491:8." Plaintiffs' Supplemental Brief at 3.

Quoting *Grinnell v. State*, 121 N.H. 823, 825 (1981), the majority states that the declaratory judgment statute, RSA 491:22, "has long been construed to permit challenges to the constitutionality of actions by our government or its branches." The majority then concludes that "[t]he plaintiffs here, however, do not challenge the constitutionality of the actions taken by the defendants," and are therefore "barred by sovereign immunity from bringing this petition" for declaratory judgment. The majority's rationale that cases holding that the declaratory judgment statute, RSA 491:22 (1997), is used to challenge the constitutionality of governmental action also inexplicably means that the statute can be used solely for that purpose is without merit.

> The plaintiffs' cause of action is based upon principles of contract and equitable estoppel. At this point they seek *only* a declaration that they *have* such a cause of action; and that *if* the defendants were to continue to take steps to terminate their employment, and professional careers, it would be a breach of contract.

Plaintiffs' Brief at 17.

"[The declaratory judgment act] is designed to prevent not only threatened wrongs, but also uncertainty and misunderstandings in the assertion of rights." *Beaudoin v. State*, 113 N.H. 559, 562 (1973). "As a consequence, declaratory relief may be sought prior to an actual invasion of rights . . . ." *Id.*

A purpose of the declaration of judgment act is to encourage identification and resolution of disputes before they cause harm and is accordingly given a liberal interpretation. 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 36.02, at 124 (1998).

The trial court expressly stated in its decision granting the motion to dismiss that the plaintiffs had a cause of action for damages because of breach of contract. Until the majority raised the question of sovereign

immunity, the defendants, in several filings, expressly stated that the plaintiffs had a cause of action for damages for breach of contract.

Given the issue of sovereign immunity, the defendants denied that the plaintiffs had the right to damages for breach of contract, asserting that the contract alleged by the plaintiffs in this case was one implied in law, whereas RSA 491:8 provided for breach of contract claims only for contracts implied in fact. The defendants argue that written and oral assurances by superior court and supreme court justices assuring court reporters that their employment was not threatened, that their reliance on those assurances inducing them not only to spend considerable amounts of money to maintain their equipment in as modern a condition as possible, but also to continue in their employment without seeking other employment to ensure their livelihood, was an implied contract in law, not an implied contract in fact.

A contract implied in fact is based on a promise manifested in language, conduct, silence or by implication from the circumstances, including a course of dealing or course of performance. RESTATEMENT (SECOND) OF CONTRACTS § 4, at 3 (1981). Contracts implied in law are quasi-contracts, lacking an apparent intention of the parties to continue the performance in question. *Id.* at 4.

At an April 22, 2004 hearing, the plaintiffs' lead counsel informed the trial court that he may need to depose former Superior Court Chief Justices Joseph Nadeau and Joseph D. DiClerico, and perhaps Supreme Court Chief Justice John Broderick, so that he could respond to the defendants' motion to dismiss by making the appropriate factual statements. The defendants objected, saying that the plaintiffs should be required to respond to the defendants' motion to dismiss within ten days and that only if the court denied the motion to dismiss should the plaintiffs have the right to conduct discovery. The trial court rejected the defendants' positions, ruling that the plaintiffs had ninety days to respond to the motion to dismiss. *See* Defendants' Objection to Second Motion for Restraining Order and/or Extended/Further Stay of Execution of Career Termination Efforts by Defendants at 13-14. The parties agreed at the hearing that the defendants would be required to give ninety days' notice of their intention to terminate the plaintiffs' employment.

The ninetieth day from the date of the court order concerning discovery would have been July 21, 2004. But the trial court granted the motion to dismiss on June 28, 2004, twenty-three days short of the ninety days, thereby ruling on the motion to dismiss before the plaintiffs deposed prospective witnesses. The plaintiffs complained about being denied discovery. *See* Plaintiffs' Brief at 24.

On July 7, 2004, the plaintiffs moved for stay of execution of employment termination "except for misconduct and good cause shown . . . during the pendency of this matter, . . . including any appeal from the Court's final order on the Petitioner's Amended Petition for Declaratory Judgment." Appendix to Plaintiffs' Brief at 35. On July 28, 2004, the trial court ruled that, "If the plaintiffs exercise their right to appeal the court's order on defendants' motion to dismiss within the time prescribed by law, then the plaintiffs' motion for stay of execution of employment termination will be considered as granted." Appendix to Plaintiffs' Brief at 38. The plaintiffs appealed as prescribed by law.

The ninety-day layoff order, if any, was to be issued after the supreme court had decided the case. Despite this trial court order staying execution of employment termination pending appeal, the defendants issued a Notice of Employment Termination dated April 21, 2005. By order dated September 7, 2005, the majority of this court ruled that acting on the plaintiffs' second motion for a restraining order and a stay of execution of career termination efforts was "unnecessary" and denied the motion. The majority did not mention the trial court's order of July 28, 2004.

The collective bargaining agreement does not authorize the immediate effectiveness of the layoff order or the notice of employment termination at this time. In negotiating the agreement, the plaintiffs refused to agree to terminate their appeal to the supreme court or to waive any right respecting their employment. The defendants stopped trying to insert language to the contrary in the agreement. The following is an excerpt from the December 9, 2004 Bargaining Session referring to the controlling effect of the trial court's July 28, 2004 order:

| | |
|---|---|
| LH (Lorri Hayes, Esq.): | [T]here is an order that says you can't conduct the layoff during the time the suit is in place, even if we made an agreement, you couldn't conduct the layoff while the suit is in place. |
| HZ (Howard Zibel, Esq. General Counsel, NH Judicial Branch): | While the suit is still in place. We'd have to get relief from the Court. |
| LH: | Exactly. |
| HZ: | A question of what the order is. It does become somewhat— |

LH: That's why my suggestion that you go to Attorney Nixon is important.

HZ: Yeah.

Plaintiffs' Objection to Motion to Dismiss at 4-6.

In filing after filing, the plaintiffs argued that at least three former chief justices of the superior court (Richard Dunfey, Joseph Nadeau, Joseph DiClerico) had the authority to assure them, and did assure them, that their jobs were secure and that they would not be replaced by electronic devices, whereas the defendants argued that the chief justices of the superior court did not have such authority, and that only the supreme court had that authority.

Written reassurances to court reporters are to be found in a June 24, 1985 memo from Chief Justice Dunfey that "the members of the Court are committed to retaining all current stenographers"; a March 11, 1992 memo to court reporters from Richard Dore reporting that Chief Justice DiClerico "has continually assured us that no Court Reporter who is presently working with the Superior Court will lose his or her job as a result of being replaced by a monitor"; a January 21, 1994 letter from Chief Justice Nadeau citing Chief Justice Dunfey's position that the jobs of the court reporters "would not be in jeopardy because of replacement by alternative recording methods"; and an August 31, 1994 "Minutes of Justices/Court Reporters Meeting" reporting Chief Justice Nadeau's statement that "the Supreme Court for budgetary reasons leans to the monitors *but have left it up to the Superior Court, within reason,* to make the decisions to hire Court Reporters." Appendix to Plaintiffs' Brief at 40-42, 46 (emphasis added).

If the plaintiffs had conducted discovery, there would have been a resolution of the question whether the superior court chief justices considered their reassurances to be their right to give as superior court chief justices, or whether they considered their reassurances to be a reflection of the policy of the supreme court.

In November 2003, the Office of Legislative Budget Assistant, in its audit of the judicial branch, stated that: "[T]he Judicial Branch has in place a long-standing plan to eliminate court reporters' positions and replace them with court monitor positions as *court reporters resign or retire from office* . . . ." *Id.* at 5 (quotation omitted; emphasis added). "[T]he Judicial Branch expects to reassess the need for stenographers in the New Hampshire Judicial Branch." *Id.* (quotation and emphasis omitted).

In a February 27, 2004 e-mail, Superior Court Chief Justice Robert Lynn reported to the court reporters that remarks by Judicial Branch General Counsel Howard Zibel to a lawyer for the State Employees

Association that the court reporters were going to be terminated on or before June 30, 2005 "should not be interpreted as meaning that the Supreme Court has made any firm decisions or established any timetable" regarding replacement of court reporters. He said he had checked with the Chief Justice of the Supreme Court and was assured that "no such decisions have been made." *Id.* at 49.

In its March 12, 2004 Administrative Order 2004-02, the supreme court "reluctantly decided" to accelerate the phase-out of court reporters and replace them with court monitors. *Id.* at 52. "It is anticipated that layoffs will occur throughout and be completed during the current biennial budget cycle ending on June 30, 2005." *Id.* However, the record supports that the decision to lay off the plaintiffs had been made in October 2003. New Hampshire Supreme Court Administrative Order 2004-02 (March 12, 2004).