NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2016-0546


XTL-NH, INC.

v.

NEW HAMPSHIRE STATE LIQUOR COMMISSION & a.

Argued: November 14, 2017
Opinion Issued: March 30, 2018


Bianco Professional Association, of Concord (James J. Bianco, Jr. and Thomas P. Colantuono on the brief, and Mr. Colantuono orally), and Nixon Peabody LLP, of Manchester (W. Scott O'Connell and Anthony J. Galdieri on the brief), for the plaintiff.

Ann M. Rice, deputy attorney general (Lisa M. English, senior assistant attorney general, Francis C. Fredericks, assistant attorney general, and Elizabeth A. Lahey, assistant attorney general, on the brief, and Ms. English orally), for defendant New Hampshire State Liquor Commission.

Devine, Millimet & Branch, PA, of Manchester (Nicholas K. Holmes on the brief and orally), for defendant Exel Inc.

HICKS, J.  The plaintiff, XTL-NH, Inc. (XTL), appeals an order of the Superior Court (McNamara, J.) that defendant New Hampshire State Liquor Commission (Commission) did not breach its obligation to provide a competitive bidding process that complied with New Hampshire law.  The Commission cross-appeals the trial court's ruling that sovereign immunity did not bar XTL's promissory estoppel claim.  Because we agree with the Commission, we vacate and remand to the trial court with instructions to dismiss for lack of subject matter jurisdiction.

I

The pertinent facts follow.  In March 2012, the Commission issued a Request for Proposal (RFP) soliciting 20-year contract proposals for liquor warehousing services from private vendors.  An Evaluation Committee (EC) reviewed five proposals and solicited "Best and Final Offers" from four of the vendors, including XTL.  Thereafter, the Commission authorized the EC to negotiate a contract with defendant Exel Inc. (Exel), who was ultimately awarded the contract in November 2012.

XTL sued the Commission, seeking preliminary and permanent injunctive relief and attorney's fees and costs.  XTL alleged that the bidding process by which the contract was awarded to Exel was unlawful under New Hampshire competitive bidding law.  See RSA 21-I:18, I(b), :22-a, :22-b (2012).  XTL subsequently amended its petition to add claims for promissory estoppel.  In Count I of its amended complaint, XTL sought equitable relief — that the court rescind the contract between the Commission and Exel and award XTL the contract, or require rebidding — on a theory of promissory estoppel.  Count II of its amended complaint also asserted a promissory estoppel claim, seeking alternative relief in the form of monetary damages for "all expenses, costs, and fees incurred in responding to the RFP and in participating in [the] bidding process," as well as lost profits.

The Commission moved for summary judgment on the grounds that the trial court lacked subject matter jurisdiction in the absence of an express statutory waiver of sovereign immunity.  Determining that "because RSA 491:8 permits contract actions against the State, XTL's promissory estoppel action is not barred by sovereign immunity," the trial court denied the Commission's motion regarding XTL's claim for monetary damages.  However, the court granted the Commission's motion with respect to XTL's claim for injunctive relief, reasoning that because the waiver of sovereign immunity in RSA 491:8 (2010) "extends only to suits seeking money damages" for breach of contract, equitable relief is barred.

XTL then moved to again amend its petition, seeking to "re-characterize" its dismissed claim "as a request for declaratory and injunctive relief and a writ of mandamus."  The trial court denied the motion because "the State has not

2

consented to be sued in equity for the claims presented." (Quotation omitted.) The court reasoned that "[t]he relief XTL seeks is nothing more than the lost profit damages that the Court has already held it may not recover, other than through a claim of promissory estoppel coupled with bad faith."

The trial court bifurcated the case into liability and damages phases and a bench trial was held on XTL's remaining promissory estoppel claim in May and June of 2016. Finding that the Commission did not breach its obligation to provide a competitive bidding process, the trial court concluded that "XTL's claim [was] nothing more than the grousing of a disappointed bidder," that the Commission's RFP "was lawful and in compliance with New Hampshire competitive bidding law," and that the Commission "complied with the terms of the RFP." Consequently, the trial court determined that "XTL [had] not succeeded in its promissory estoppel claim." This appeal followed.

II

On appeal, XTL contends that: (1) the trial court erred "by failing to analyze whether the [Commission] complied with competitive bidding as mandated by RSA 21-A:18"; (2) the Commission's RFP process did not comply with New Hampshire competitive bidding law and thus "the resulting contract is . . . void"; (3) the trial court erred in denying XTL's motion to amend to add claims for declaratory relief and for a writ of mandamus; and (4) that "if the trial court ruled in a footnote that [XTL] could not establish reasonable reliance, that ruling constituted error." (Bolding and capitalization omitted.) The Commission cross-appeals, arguing that although the trial court "properly found that XTL could not maintain a statutory claim that [the Commission] violated RSA 21-I:18, :22-a, and :22-b because it was barred by sovereign immunity," it was error for the court to permit XTL "to maintain essentially the same claim under the guise of promissory estoppel." We do not reach the merits of XTL's claims because we hold that they are barred by sovereign immunity. Pursuant to that immunity, neither the superior court nor this court is vested with subject matter jurisdiction.

III

The State is immune from suit in its courts without its consent. Sousa v. State, 115 N.H. 340, 342 (1975). Sovereign immunity rested upon a common law basis until the enactment in 1978 of RSA chapter 99-D, which adopted sovereign immunity "as the law of the state," except as otherwise provided by statute. Lorenz v. N.H. Admin. Office of the Courts, 152 N.H. 632, 634 (2005) (quotation omitted). As a State agency, the Commission is "cloaked with the State's sovereign immunity." Chase Home for Children v. N.H. Div. for Children, Youth & Families, 162 N.H. 720, 730 (2011). Accordingly, the Commission is immune from suit in New Hampshire courts "unless there is an applicable statute waiving immunity." Id. Any statutory waiver is limited to

that which is articulated by the legislature; thus, New Hampshire courts lack subject matter jurisdiction over an action against the State "unless the legislature has prescribed the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." Lorenz, 152 N.H. at 634 (quotation and brackets omitted); see LaRoche, Adm'r v. Doe, 134 N.H. 562, 566-67 (1991). "Sovereign immunity is a jurisdictional question not to be waived by conduct or undermined by estoppel." LaRoche, 134 N.H. at 566 (quotation omitted).

XTL asserts that "[a]n action for promissory estoppel . . . is founded upon the Restatement (Second) of Contracts § 90 (1979), . . . and a promise binding under § 90 . . . is a contract." (Quotation and brackets omitted.) According to XTL, because RSA 491:8 "permits contract actions for damages against the State," allowing its promissory estoppel claim does not interfere with the State's sovereign immunity.

RSA 491:8 provides that "[t]he superior court shall have jurisdiction to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state." This statutory provision "partially abrogates the State's sovereign immunity." Morgenroth & Assoc's, Inc. v. Town of Tilton, 121 N.H. 511, 514 (1981). The statute originated in 1950 when the Judicial Council submitted a draft bill to the legislature recommending "enactment of a statute abrogating State sovereign immunity for claims based on express or implied contracts." Id. at 515; see N.H. Judicial Council, The Third Report 40-42 (1950). As originally enacted, the law did not follow the Judicial Council's recommendation with respect to implied contracts, see Laws 1951, 243:1 (providing that "[t]he superior court shall have jurisdiction to enter judgment against the State of New Hampshire founded upon any express contract with the state").

In 1952, the Judicial Council renewed its recommendation to include implied contracts within the limited waiver of sovereign immunity, reasoning that the legislature's failure to do so was likely "due to some misconception as to the nature of an implied contract." N.H. Judicial Council, The Fourth Report 34 (1952). The Judicial Council explained that "[a]n implied contract in its essential characteristics is not different from an express contract except that some terms must be implied. In any suit founded on contract, either express or implied, recovery depends upon the existence of a contract." Id. The legislature subsequently amended the statute to include any "express or implied contract with the state." See Laws 1953, 83:1.

Based upon that explanation, we determined that "the Judicial Council understood an 'implied contract' to be an implied in fact contract" and that, therefore, by its subsequent amendment of the statute, "the legislature intended to adopt the Judicial Council's interpretation of 'implied contract,' which is limited to an implied in fact contract." Morgenroth, 121 N.H. at 515-

4

16. As we explained, the statute does not abrogate the State's sovereign immunity to claims against the State based upon implied in law contracts. Id. at 516. "An implied in law contract . . . is not a contract but is a legal remedy imposed by a court." Id. at 514. "Technically, only implied in fact contracts may be called 'implied contracts'; implied in law contracts are more accurately called 'quasi-contracts.'" Id.

We have recognized that RSA 491:8 is "in some respects analogous to" the so-called federal Tucker Act. Wiseman v. State, 98 N.H. 393, 396 (1953); see 28 U.S.C. § 1346 (2012). The Tucker Act confers jurisdiction on the federal district courts and on the United States Court of Federal Claims of "[a]ny . . . claim against the United States . . . founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2).

"[N]umerous decisions have held that this waiver of sovereign immunity is limited to express contracts and contracts implied in fact and does not extend to contracts implied in law or founded upon equitable principles." Knight Newspapers, Inc. v. United States, 395 F.2d 353, 357 (6th Cir. 1968). "Although the commentators do not agree as to the nature of the promissory estoppel cause of action, it cannot be characterized merely as an 'express or implied-in-fact' contract." Jablon v. United States, 657 F.2d 1064, 1070 (9th Cir. 1981). Accordingly, "[b]ecause the Tucker Act is interpreted to allow causes of action founded only on express or implied-in-fact contracts, the doctrine of promissory estoppel is not within the parameters of the [federal court's] jurisdiction." Durant v. United States, 16 Cl. Ct. 447, 450 (Cl. Ct. 1988); see LaMirage, Inc. v. United States, 44 Fed. Cl. 192, 200 (Fed. Cl. 1999) (explaining that it is "well settled that this court is without jurisdiction to entertain claims arising from a contract, based on the theory of promissory estoppel, or based on contracts implied-in-law"); Jablon, 657 F.2d at 1070 (finding no cases construing the Tucker Act that have included awards based upon a promissory estoppel theory, the court concluded that the government has not waived its sovereign immunity with regard to a promissory estoppel cause of action).

In addition, we note that several other jurisdictions have concluded that promissory estoppel claims are, by definition, based upon a contract implied in law. See, e.g., Tiberi v. Cigna Corp., 89 F.3d 1423, 1432 (10th Cir. 1996) (stating that promissory estoppel is "a contract implied in law where no contract exists in fact" and, therefore, "is applied in lieu of a formal contract" (quotation omitted)); Ind. Bureau of Motor Vehicles v. Ash, Inc., 895 N.E.2d 359, 367 (Ind. Ct. App. 2008) (stating that "[p]romissory estoppel or quasi-contractual remedies permit recovery where no contract in fact exists" and that quasi contracts "are implied by law" (quotation omitted)); Double AA Builders v. Grand State Const., 114 P.3d 835, 844 (Ariz. Ct. App. 2005) (concluding that "even if a promise made enforceable by promissory estoppel could be considered a contractual obligation, it is based on a contract implied in law,

not a contract implied in fact"); Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (explaining that promissory estoppel "is an equitable doctrine that implies a contract in law where none exists in fact" (quotation and brackets omitted)).

Given our legislature's reliance upon the language of the Tucker Act in enacting RSA 491:8, and our subsequent determination that the legislature's waiver of the State's sovereign immunity is intended to be limited to claims based upon an implied in fact contract, we find these decisions persuasive. "The extent to which [sovereign] immunity should be preserved or waived is purely a legislative question." Opinion of the Justices, 101 N.H. 546, 549 (1957); see LaRoche, 134 N.H. at 594. Thus, we decline to conclude that a claim against the State based upon promissory estoppel falls within the limited waiver of sovereign immunity set forth in RSA 491:8.

XTL contends that Marbucco Corp. v. City of Manchester, 137 N.H. 629 (1993), provides it "with a cause of action sounding in promissory estoppel for the [Commission's] failure to comply with the competitive bidding law of the State." (Bolding and capitalization omitted.) Marbucco is distinguishable, however, as that case involved a municipal contract, not, as here, an alleged contract with the State, Marbucco, 137 N.H. at 631. See Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 279 (1992) (explaining that "[t]he immunity of government from liability on contracts has never been regarded as applicable to local governmental units" (quotation omitted)).

We hold, therefore, that the trial court erroneously determined that it had subject matter jurisdiction to hear XTL's promissory estoppel claim against the Commission. Given our holding, we need not address XTL's argument that the trial court erred in denying its motion to amend its pleadings to add claims for declaratory relief and for a writ of mandamus, as those claims were predicated upon the same allegations as its promissory estoppel claim.

Vacated and remanded.

LYNN, J., concurred; TUCKER, J., superior court justice, specially assigned under RSA 490:3, concurred.