NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2014-0553


ARANOSIAN OIL CO., INC. & a.

v.

STATE OF NEW HAMPSHIRE

Argued: June 18, 2015
Opinion Issued: October 27, 2015


Bianco Professional Association, of Concord (James J. Bianco, Jr. and Christina A. Ferrari on the brief, and Mr. Bianco orally), and Law Office of Manning & Zimmerman, PLLC, of Manchester (Anna Goulet Zimmerman on the brief), for the petitioners.


Joseph A. Foster, attorney general (K. Allen Brooks, senior assistant attorney general, on the brief and orally), for the respondent, the State of New Hampshire.


CONBOY, J. The petitioners, importers or distributors of oil into New Hampshire, appeal an order of the Superior Court (Brown, J.) denying their petition for declaratory judgment and equitable relief against the respondent, the State of New Hampshire. We affirm.

The Environmental Protection Agency (EPA) requires that owners of underground storage tanks demonstrate their ability to pay cleanup costs and compensate third parties for bodily injury and property damage arising out of releases of petroleum products from their tanks. See 40 C.F.R. § 280.93 (2014). New Hampshire's Oil Discharge and Disposal Cleanup Fund (ODD Fund), established in 1988, is an EPA-approved program that complies with the federal requirement. RSA ch. 146-D (Supp. 2014); see Laws 2014, 177:1 (repealing RSA chapter 146-D, eff. July 1, 2025). The purpose of the ODD Fund is

> to establish financial responsibility for the cleanup of oil discharge and disposal, and to establish a fund to be used in addressing the costs incurred by the owners of underground storage facilities and bulk storage facilities for the cleanup of oil discharge and disposal, to protect groundwater, and for reimbursement for third party damages.

RSA 146-D:1.

The ODD Fund operates as an excess insurance fund. An owner of an underground storage facility is eligible to receive reimbursements from the fund only to the extent that costs and damages incurred by the owner exceed the policy limits of the owner's private insurance. RSA 146-D:6, III (amended 2015). Each underground storage facility owner is subject to a statutory deductible ranging from $5,000 to $30,000 based upon the number of facilities owned, and to a reimbursement cap of $1,500,000. RSA 146-D:6, II, III (amended 2015). In addition, the underground storage facility owner must be in compliance with state law. RSA 146-D:6, I (amended 2015).

The ODD Fund is financed by a fee upon imported oil. RSA 146-D:3, I (amended 2015). The fee is paid on a per gallon basis by distributors who import oil into New Hampshire. RSA 146-D:3, II (amended 2015). The fee currently is $.015 per gallon. Id. The ODD Fund is capped at $10,000,000, at which point the fees are "discontinued and only reestablished when the fund's balance is less than $5,000,000." Id. Since 1988, when the ODD Fund was established, fees have been suspended twice, once from December 1996 through July 1998, and again from September 1999 through December 2000.

In 2003, the State sued several gasoline suppliers, refiners, and chemical manufacturers seeking damages for groundwater contamination allegedly caused by methyl tertiary butyl ether (MTBE), an oxygenate added to gasoline to increase the octane levels of fuels. See State v. Exxon Mobil Corp., 168 N.H. ___, ___ (decided October 2, 2015) (Exxon MTBE litigation). The petitioners were not parties to that lawsuit. Prior to trial, the State settled with all defendants except Exxon Mobil Corporation and ExxonMobil Oil Corporation (collectively, Exxon). Id. at ___. The State received $136,510,120 from those settlements. The case went to trial against Exxon in 2013. Id. at ___. The jury

determined that the State's total damages from groundwater contamination due to MTBE are $816,768,018.  Id. at ___.  The jury determined that $142,120,005 of those damages were attributable to past cleanup costs.  Id. at ___.  The jury found that Exxon's market share for gasoline in New Hampshire during the applicable time period was 28.94% and, accordingly, the trial court entered an amended verdict of total damages against Exxon in the amount of $236,372,644.  Id. at ___.  We affirmed the verdict on appeal.  See id. at ___.

In 2012, the petitioners brought a petition for declaratory judgment and equitable relief against the State.  Each petitioner is a "'distributor'" of oil under RSA chapter 146-D and paid fees into the ODD Fund.  They alleged that "[t]o date, the costs of MTBE remediation in the State of New Hampshire has been paid for primarily through" the ODD Fund, and that that fund is financed, in part, through fees that they paid.  The petitioners sought a declaration that those fees "are unconstitutional as the [State] has recovered and/or will recover funds from the MTBE Lawsuit for the cost of MTBE remediation," and that those fees should be reimbursed to them from:  (1) "the settlement proceeds the [State] has received and will receive through the MTBE Litigation"; (2) "any future recovery the [State] receives through the MTBE Litigation"; and (3) "[a]dditionally, or in the alternative, . . . from the funds recovered, and/or to be recovered in the future in the MTBE Litigation, . . . under principles of equitable subrogation and/or unjust enrichment."

The parties stipulated to the following facts.  The petitioners paid $29,493,100.15 into the ODD Fund from December 1989 through December 2012.  All but three petitioners sold gasoline to both third-party customers and gas stations that they own or with which they are affiliated.  When a petitioner sold gasoline to a third party, the petitioner included the $.015 per gallon fee in the invoice.  For the gasoline provided to gas stations that a petitioner owned or with which it was affiliated, there was not an invoiced charge for the $.015 per gallon fee.  From 1996 to the end of 2012, the petitioners have collectively received $15,334,855 in reimbursements from the ODD Fund.  From its inception in 1988, through the end of fiscal year 2013, ODD Fund income totaled $221,705,908.  Of that total, $142,120,005 was spent on cleanup and remediation of MTBE.  The balance of the ODD Fund income was spent on administrative costs, and cleanup and remediation costs unrelated to MTBE, or remains in the ODD Fund.

Following a two-day bench trial, the trial court denied the petition.  The court found that the petitioners lacked standing to seek reimbursement out of the settlement funds because "the petitioners were not parties to the settlement agreements, nor did they raise any objection at the time they were approved by the Court."  Assuming that the petitioners' claims were ripe with respect to the verdict money in the Exxon MTBE litigation, the trial court rejected their claims that payments made by them into the ODD Fund although not unconstitutional at the time they were paid, have been rendered unconstitutional by the State's recovery in the MTBE litigation.  The trial court reasoned:

3

The parties do not dispute that the cleanup and remediation from MTBE contamination is far from complete: the jury found that the State was entitled to $674,648,013 in damages for MTBE remediation which the State had yet to undertake. Thus, even if the Supreme Court upholds the $236,372,664 verdict against ExxonMobil, the total recovery by the State from all settling and non-settling defendants would only total $372,882,784, which is far short of the funds needed to remediate already-identified MTBE contamination. It also far exceeds the current . . . ODD . . . Fund [ ] balance, and the $29,493,100.15 paid into the ODD Fund by the petitioners since the Fund's inception[.] Accordingly, the fees paid by the petitioners are not grossly disproportionate to "the costs incurred by the owners of underground storage facilities and bulk storage facilities for the cleanup of oil discharge and disposal, to protect groundwater, and for reimbursement for third party damages," RSA 146-D:1, and are not retroactively unconstitutional.

The court concluded that "[b]ecause the petitioners' constitutional claim underpins their equitable claims, and the Court finds the fund fees are not unconstitutional, the doctrine of sovereign immunity bars the petitioners' equitable claims."

On appeal, the petitioners argue that the trial court erred in ruling that they lack standing to seek reimbursement of their fees from the settlement funds. They also argue that the trial court erred in ruling that their equitable claims are barred by sovereign immunity. Subsidiary to that claim, they argue that the court erred by "failing to find that the State's use of the settlement funds recovered in the MTBE litigation to set up a new bureaucracy . . . [is] unconstitutional," and that the court's denial of a remedy violates their constitutional rights under Part I, Article 14 of the New Hampshire Constitution. In addition, they seek plain error review of their argument that "the State's diversion of the settlement funds recovered through the MTBE litigation constitutes an unconstitutional taking." See Sup. Ct. R. 16-A.

As to the trial court's ruling that their payments of fees into the ODD Fund had not been rendered unconstitutional by recovery in the Exxon MTBE litigation, the petitioners argue that the court's "reasoning is erroneous because it is a misapplication of the rule under New Hampshire law for determining when a fee becomes an unconstitutional tax." According to the petitioners, "[s]ince the State will recover sums in excess of $142,120,005, . . . there is no doubt that the State is essentially experiencing a double recovery of the MTBE-related expenditures from the ODD Fund, once from the Petitioners and once from the Defendants in the MTBE litigation." They assert that "[t]his renders the ODD Fund fees charged to the Petitioners . . . unconstitutional taxes because they are greatly disproportional to the sums actually required to operate the ODD Fund."

The State argues that, "[a]t a minimum, the fees collected are not disproportionate to regulatory oversight and other services rendered" under the statutory scheme. According to the State, it "incurs significant costs associated with the importation of petroleum products," and "[t]he petitioners presented no evidence, and no analysis, with respect to the overall costs of services in relation to the fees collected." The State asserts that the petitioners "also fail to include any analysis regarding the relationship of fees to costs incurred under RSA chapter 146-D . . . unrelated to MTBE." Furthermore, the State argues, "including both settlements and possible verdict money, the State may receive half of what it needs" to clean up just one gasoline additive — MTBE — "[t]herefore, if anything, the amount collected is disproportionately low compared to actual environmental needs." The State asserts that the damages recovered in the Exxon MTBE litigation "consists of all damages including the costs of a statewide testing and monitoring program, three-dimensional characterization of impacted sites, and other measures necessary to remediate MTBE."

The trial court's rulings on questions of law, including statutory interpretation and constitutional questions, are reviewed de novo. See State v. Marshall, 162 N.H. 657, 661 (2011). Legislative acts are presumed to be constitutional and will not be declared invalid except upon inescapable grounds. See Duquette v. Warden, N.H. State Prison, 154 N.H. 737, 745 (2007). "This means that we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." Petition of S. N.H. Med. Ctr., 164 N.H. 319, 324 (2012) (quotation omitted). "The party challenging a statute's constitutionality bears the burden of proof." State v. Pierce, 152 N.H. 790, 791 (2005).

"It has long been recognized that governmental undertakings can properly be supported in whole or in part by charges made upon those who necessitate the services or who avail themselves of the advantages offered thereby." Opinion of the Justices, 117 N.H. 382, 384 (1977). "Such charges must . . . bear a relation to the expense of rendering the particular service." Id. "Charges of this nature are not taxes, and constitutional limitations upon the taxing power have no application thereto." Id.

"What is a reasonable . . . fee depends in large part on sound legislative discretion." Opinion of the Justices, 112 N.H. 166, 170 (1972). The amount of a fee will be sustained so long as it is not "grossly disproportionate" to the regulatory expenses. Hooksett Drive-In Theatre, Inc. v. Hooksett, 110 N.H. 287, 289 (1970). A fee may cover incidental expenses "incurred in consequence of the activity regulated provided the resulting fee does not become unreasonable." Opinion of the Justices, 112 N.H. at 170. The fact that a fee may "produce some surplus revenue does not render the . . . act unreasonable or invalid." American Automobile Assoc. v. State, 136 N.H. 579, 585 (1992) (quotation omitted).

5

As set forth above, the purpose of the ODD Fund is to "address[ ] the costs incurred by the owners of underground storage facilities and bulk storage facilities for the cleanup of oil discharge and disposal, to protect groundwater, and for reimbursement for third party damages." RSA 146-D:1 (amended 2015). The ODD Fund satisfies the federal requirement that owners of underground storage tanks demonstrate their ability to pay cleanup costs and compensate third parties for bodily injury and property damage arising out of releases of petroleum products from their tanks. See 40 C.F.R. § 280.93. From 1996 to the end of 2012, the petitioners have collectively been reimbursed $15,334,855 from the ODD Fund for costs that would otherwise have been borne by the petitioners themselves. Thus, the fees are paid by those "who necessitate the services" and "who avail themselves of the advantages offered thereby." Opinion of the Justices, 117 N.H. at 384.

In their memorandum of law in support of the petition for declaratory judgment, the petitioners conceded that "the funds paid into the ODD . . . Fund[ ] should not be categorized as taxes . . . , but as fees for a specific purpose." On appeal, the petitioners do not argue that when they paid the $.015 per gallon ODD Fund fee that fee was grossly disproportionate to the regulatory expenses associated with rendering the services provided under RSA chapter 146-D. Rather, they claim that because of the State's recovery in the Exxon MTBE litigation, the fees have become "disproportional to the sums actually required to operate the ODD Fund" and, therefore, are unconstitutional taxes. However, as the trial court noted, "[t]he petitioners have failed to cite any case law in support of their theory that a fee can be constitutional when paid, yet be rendered retroactively unconstitutional by the subsequent emergence of an alternative source of funds that addresses the same expense as the fee program." We affirm the trial court's ruling that the ODD Fund fees are not rendered unconstitutional taxes as a result of the Exxon MTBE litigation. Accordingly, we need not address the petitioners' argument that the trial court erred in ruling that they lack standing to seek reimbursement of their fees from the settlement funds.

The petitioners also argue that the trial court erred in ruling that their claims for reimbursement from the recovered funds in the Exxon MTBE litigation were barred by sovereign immunity. The trial court concluded that "[b]ecause the petitioners' constitutional claim underpins their equitable claims, and the Court finds the fund fees are not unconstitutional, the doctrine of sovereign immunity bars the petitioners' equitable claims." The trial court reasoned:

In the present case, the plaintiffs seek equitable relief, in the form of reimbursement of funds, based on the principles of unjust enrichment and equitable subrogation. To the extent the relief the petitioners seek arises from the alleged unconstitutionality of the State's actions, the petitioners' claims are not barred by sovereign

6

immunity. See [Lorenz v. N.H. Admin. Office of the Courts, 152 N.H. 632, 635 (2005)]. However, to the extent the petitioners' equitable claims are unrelated to an alleged constitutional deficiency, sovereign immunity bars their petition. Furthermore, if the petitioners' constitutional claim fails, so too must their claims for equitable relief. See id. Because the Court finds the petitioners' constitutional claim fails, the petitioners' equitable claims are barred by sovereign immunity.

(Citation and footnote omitted.)

Under the doctrine of sovereign immunity, the State is immune from suit in its courts without its consent. See Tilton v. Dougherty, 126 N.H. 294, 297 (1985). The public policy considerations underlying sovereign immunity are twofold: "the protection of the public against profligate encroachment on the public treasury, and the need for the orderly administration of government, which, in the absence of immunity, would be disrupted if the state could be sued at the instance of every citizen." In re Estate of Raduazo, 148 N.H. 687, 692 (2002) (quotation omitted). The State has consented to suits for personal injury, bodily injury, death or property damages in certain cases, RSA chapter 541-B (2007 & Supp. 2014), and suits for breach of contract, RSA 491:8 (2010); see also Raduazo, 148 N.H. at 692 (sovereign immunity does not apply when the State itself asserts a claim over another's property). In addition, the declaratory judgment statute "has long been construed to permit challenges to the constitutionality of actions by our government or its branches." Lorenz, 152 N.H. at 635 (quotation omitted). "[W]here the plaintiffs seek a declaratory judgment that actions taken by the State are unconstitutional, the court has jurisdiction to grant equitable relief." Id. (quotation and brackets omitted).

We agree with the trial court that, pursuant to these principles, absent a successful constitutional challenge, the petitioners' claims for reimbursement of the ODD Fund fees based upon equitable subrogation and unjust enrichment are barred by sovereign immunity. Thus, because we affirm the trial court's ruling that the petitioners' constitutional claim fails, sovereign immunity bars their equitable claims.

Finally, the petitioners argue that "the State's diversion of the settlement funds recovered through the MTBE litigation constitutes an unconstitutional taking" in violation of their rights under Part I, Article 12 of the New Hampshire Constitution. In January 2015, the petitioners requested that we stay the appellate process and remand this case to the trial court because "in preparing their brief for this appeal, [they] have discovered an additional constitutional challenge . . . , namely that the [State's] failure to reimburse [the petitioners] the ODD Fund fees that they paid . . . constitutes a taking in violation of the [petitioners'] constitutional rights under Part I, Article 12 of the New Hampshire Constitution." The petitioners asserted that "[i]t is important that the Superior

Court have an opportunity to consider all of [their] constitutional challenges in this matter and to rule on them before the appellate process continues." We denied the motion. Nonetheless, the petitioners seek appellate review of this issue under the plain error rule. See Sup. Ct. R. 16-A ("A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court."). The State argues that the petitioners' failure to raise their taking claim in the trial court does not constitute error subject to plain error analysis; the State argues that the petitioners simply waived this claim.

Under the plain error rule, we may consider errors not raised before the trial court. State v. Russell, 159 N.H. 475, 489 (2009). "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Id. (quotation omitted). Plain error review "is an exception to the contemporaneous objection rule and provides us with the discretion to review unpreserved error on appeal for plain error that affects substantial rights." State v. Hebert, 158 N.H. 306, 314 (2009); see State v. Ortiz, 162 N.H. 585, 590 (2011). To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." State v. Matey, 153 N.H. 263, 266 (2006) (quotation omitted).

The petitioners simply assert that their "omission of this argument at the Superior Court level was a plain error that affects the Petitioners' substantial rights and the fairness, integrity or public reputation of judicial proceedings," without setting forth any analysis establishing that the review they seek satisfies the requirements of plain error. However, even assuming, without deciding, that the petitioners' failure to raise their taking claim in the trial court constitutes an error subject to plain error analysis, and that the petitioners have standing to raise issues regarding settlement agreements to which they were not parties, the plain error rule is not met when the case presents a question of first impression. See Ortiz, 162 N.H. at 591. Under such circumstances, any "error" by definition is not "plain." See id. ("'Plain' as used in the plain error rule is synonymous with clear or, equivalently, obvious." (quotation omitted)). Thus, because the petitioners' argument, that the State's failure to reimburse the ODD Fund fees is an unconstitutional taking, constitutes an issue of first impression, the petitioners have failed to demonstrate plain error.

Affirmed.

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.