# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0468, <u>Portsmouth Quality Flooring Corporation v. Jill Ballentyne & a.</u>, the court on April 13, 2018, issued the following order:**

Having considered the brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, Jill Ballentyne and Mark Ballentyne (owners), appeal an order of the Circuit Court (<u>Coughlin</u>, J.) in favor of the plaintiff, Portsmouth Quality Flooring Corporation (PQF), on its contract claim. They contend that the trial court erred by finding that they had a contract with PQF and that PQF was not a subcontractor, and by fashioning an equitable remedy.

We first address whether the trial court erred in finding that a contract existed between PQF and the owners. An implied-in-fact contract is a true contract that is not expressed in words; the terms of the agreement are inferred from the parties' conduct. <u>Chase Home for Children v. N.H. Div. for Children, Youth & Families</u>, 162 N.H. 720, 728 (2011). Like all contracts, implied-in-fact contracts cannot be formed absent an offer, acceptance, consideration, and a meeting of the minds. <u>Id</u>. Whether such a contract has been formed is a factual question. <u>Id</u>. Thus, we will sustain the trial court's finding on this issue unless it is lacking in evidentiary support or tainted by an error of law. <u>Id</u>. at 728-29.

In this case, PQF's president testified that the owners contacted PQF, visited its showroom to select tile, and requested its design services. PQF went to the owners' home, measured the bathroom, and provided design suggestions. PQF issued an invoice for materials and installation directly to the owners, which was dated June 26, 2015. Thereafter, PQF delivered the tile to the owners' house and installed it.

On July 1, 2015, the owners hired a general contractor. At some point, the contractor hand-delivered a check drawn on his account to PQF to cover the deposit on the tiles. PQF's president testified that he understood that the check was on behalf of the owners. He further testified that, when the check was delivered, he did not know that the person who wrote and delivered it was the owners' contractor and that the contractor did not give any instructions regarding future invoices.

The owners argue that "[o]nce the general contractor delivered payment from his own account for the tiles, [PQF necessarily] became a subcontractor." They further argue that there was no "meeting of the minds" to support a contract with PQF because they "never intended to provide anything of value to PQF in exchange for its services." They contend that, because the trial court noted that they "may" have paid the contractor for PQF's materials and labor, it made "an extraordinary assumption" that they intended to pay both the contractor and PQF for the same services. They point to the fact that PQF attempted, unsuccessfully, to contact the contractor after they told PQF that they had paid the contractor for PQF's materials and labor as showing that PQF anticipated being paid by the contractor. According to the owners, the trial court should not have relied upon their prior transaction because their intent in the prior transaction was to deal directly with PQF, while their intent in the current transaction was to enter into a contractual relationship solely with the contractor.

A subcontract is a contractual relationship between a general contractor and a subcontractor relative to a project that is independent of the contract between the project's owner and the general contractor, and, as a general rule, imposes no contractual liability on the owner. Guitarini v. Company, 98 N.H. 118, 119 (1953). As such, its formation requires all the formal elements of a contract, and we are aware of no authority standing for the proposition that merely accepting payment from a contractor on behalf of an existing customer necessarily creates a subcontract relationship.

Whether a meeting of the minds occurred is analyzed under an objective standard and is a question of fact. Chase Home, 162 N.H. at 727. In this case, there was no evidence, beyond the contractor's mere payment of the deposit on the tiles, that a contractual relationship existed between the contractor and PQF that was independent of PQF's relationship with the owners. Indeed, PQF's president testified that PQF never had any interactions with the contractor, either before or after it supplied and installed the tiles, other than to accept the deposit check provided on behalf of the owners. By contrast, the evidence establishes that prior to even hiring a contractor the owners interacted with PQF directly by selecting the tile. They then had PQF deliver the tiles directly to their home and install them. The owners' subsequent subjective intent to pay the contractor for PQF's labor and materials did not alter the owners' contract with PQF.

Under these circumstances, we conclude that the trial court's finding that the owners and PQF had a verbal contract was amply supported by the evidence and not legally erroneous. See id. at 728-29. In light of this conclusion, we need not address the owners' argument that the trial court erred by awarding equitable relief. See Morgenroth & Assoc's., Inc. v. Town of Tilton, 121 N.H. 511,

2

514 (1981) (stating implied-in-fact contract is true contract, as opposed to legal remedy for unjust enrichment).

Affirmed.

Lynn, C.J., and Hicks, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**
